CC-1998-216                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gobierno Municipal de Vega Baja<br>        Recurrido<br><br>               v.<br><br>Administración de Terrenos de Puerto Rico<br>        Peticionaria | Certiorari<br><br>2001 TSPR 101<br><br>154 DPR ____ |

Número del Caso: CC-1998-216

Fecha: 29/junio/2001

Tribunal de Circuito de Apelaciones:
                              Circuito Regional II

Juez Ponente:
                              Hon. Roberto L. Córdova Arone

Abogado de la Parte Peticionaria:
                              Lcdo. Ulrich Schwabe Rivera

Abogado de la Parte Recurrida:
                              Bufete Bauzá & Dávila

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gobierno Municipal de Vega Baja

    Recurrido

             v.                    CC-1998-216

Administración de Terrenos de
Puerto Rico

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 29 de junio de 2001

      Referente al caso de epígrafe, confirmamos la parte dispositiva de la Sentencia del Tribunal de Circuito de Apelaciones.  Se ordena a la parte peticionaria el cumplimiento cabal de su Reglamento de Adquisición y Disposición de Propiedades Inmuebles, Núm. 4668 de 29 de enero de 1992.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Juez Asociada señora Naveira de Rodón emite Opinión de Conformidad a la cual se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Hernández Denton.  El Juez Asociado señor Fuster Berlingeri concurre en cuanto a confirmar el resultado dispuesto por el foro apelativo.  Los Jueces Asociados señores Corrada del Río y Rivera Pérez disienten sin opinión escrita.  El Juez Asociado señor Rebollo López no interviene.

                               Isabel Llompart Zeno
                     Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gobierno Municipal de Vega Baja

     Recurrido

        vi.                           CC-1998-216

Administración de Terrenos de
Puerto Rico

     Peticionaria

Opinión de Conformidad emitida por la Juez Asociada señora Naveira de Rodón a la cual
se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico a 29 de junio de 2001

I

El 11 de octubre de 1994, el Sr. Méndez Cuesta presentó a la Administración de Terrenos (en adelante Administración) una solicitud para la adquisición de unos terrenos, pertenecientes a la Administración, sitos en el Barrio Algarrobo en el Municipio de Vega Baja. La solicitud expresaba un interés en desarrollar un proyecto de vivienda para familias de bajos ingresos. Luego de la solicitud, se constituyó la Sociedad Especial Jardín Real (en

adelante Jardín Real), quien compraría los terrenos una vez se adjudicara la solicitud.

Para considerar los planteamientos y pruebas de las partes interesadas en el desarrollo del proyecto de vivienda, la Junta de Planificación (en adelante Junta) celebró una vista pública el 18 de abril de 1996, en el Salón de Asambleas de la Casa Alcaldía de Vega Baja.[1] La Junta aprobó condicionalmente[2] la consulta de ubicación del proyecto de vivienda antes mencionado el 26 de junio de 1996.[3] El 6 de agosto de 1996, el Municipio de Vega Baja (en adelante Municipio)[4] solicitó a la Junta que reconsiderara la aprobación del proyecto. La Junta, luego de señalar que de los documentos que el Municipio presentó no se desprendía que éste hubiese notificado a Jardín Real, decidió reafirmarse en lo expresado en la aprobación de la consulta de ubicación el 30 de agosto de 1996.

Así las cosas, por carta con fecha de 22 de agosto de 1996, la Administración notificó al Municipio su intención de disponer de los terrenos para la construcción del proyecto de vivienda de interés social. En carta con fecha de 18 de septiembre de 1996, el Municipio le comunicó a la Administración su interés en adquirir los terrenos para la ampliación de facilidades recreativas. Informó en la solicitud que no contaba con los fondos asignados, ni con la aprobación de la Asamblea Municipal para la transacción. Señaló que el proyecto que pretendía realizar estaba en la etapa conceptual.

Por comunicación escrita con fecha de 23 de septiembre, la Administración le solicitó al Municipio su cooperación para permitir la eventual disposición de los terrenos para el proyecto de vivienda de interés social.[5]

Finalmente, por carta de 30 de diciembre de 1996, la Administración le informó al Municipio que la Junta de Gobierno determinó aprobar la propuesta a favor de Jardín Real. Entre las consideraciones que tuvo la Junta de Gobierno para llegar a esta determinación estaban: (1) alto interés público de encausar proyectos de vivienda de interés social, (2)

---

[1] En la vista pública, un grupo de residentes del Barrio Algarrobo compareció para expresar su oposición al proyecto de vivienda. El Municipio también expresó su oposición argumentando que "en los últimos años los organismos gubernamentales han permitido el continuo desarrollo de proyectos residenciales en áreas sensitivamente ecológicas y consideradas para conservación sin considerar los posibles efectos negativos sobre dichos ecosistemas". Párrafo 13 de la Consulta de Ubicación Condicionada.

[2] Una de las condiciones fue que la parte promovente, Jardín Real, deberá coordinar con el Municipio para establecer una aportación económica que realizará el desarrollador por cada unidad de vivienda a construirse. Dicha aportación económica se utilizará para dar mantenimiento al sistema pluvial. Luego de la aprobación de la consulta de ubicación, Jardín Real solicitó reconsideración únicamente de esta condición, la cual fue denegada el 30 de agosto de 1996.

[3] Consulta Núm. 95-09-1227-JGU-ISV.

[4] El Municipio de Vega Baja no tiene aprobado un Plan de Ordenación Territorial según lo autoriza la Ley de Municipios Autónomos.

[5] Es menester aclarar que en esta comunicación la Administración no adjudica la venta del terreno a favor de Jardín Real, simplemente le explica al Municipio que dicho terreno será utilizado para el programa de vivienda de personas de bajos recursos.

deudas pendientes del Municipio a favor de la Administración y, (3) lo adelantada que estaba la negociación de la compraventa con Jardín Real. A pesar de no haber informado al Municipio la alternativa de reconsideración, el 21 de enero de 1997 éste presentó una Moción de Reconsideración.

El 31 de enero de 1997, la Administración le informó al Municipio que elevaría la moción de reconsideración a la Junta de Gobierno. Finalmente, el 1 de abril, la Junta de Gobierno denegó la reconsideración solicitada. El 12 de mayo, el Municipio presentó recurso de revisión ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Éste, mediante sentencia de 12 de febrero de 1998, revocó la determinación de la Administración. Expresó que la oferta que le hizo la Administración al Municipio no era bona fide, según lo requiere el Art. XII(A)(3) del Reglamento de Adquisición y Disposición de Bienes Inmuebles. Determinó además que al Municipio no se le puede tratar como "solicitante" regular, sino como preferente. Finalmente, concluyó que el contrato de venta entre la Administración y Jardín Real fue en contravención a lo dispuesto en el Reglamento antes mencionado, por lo que es ultra vires y nulo.

Inconforme, la Administración recurrió ante nos solicitando que se revoque la sentencia del Tribunal de Circuito y se confirme la determinación final de la Junta de Gobierno de la Administración.[6] En reconsideración, decidimos expedir el recurso solicitado.

Las controversias trabadas en el caso de autos nos brindan la oportunidad de interpretar por vez primera el Reglamento de Adquisición y Disposición de Propiedades Inmuebles de la Administración de Terrenos, Reglamento Núm. 4668 de 29 de enero de 1992 (en adelante Reglamento de Disposición) en armonía con la Ley Orgánica de la Administración, Ley Núm. 13 de 16 de mayo de 1962, según enmendada, 23 L.P.R.A. § 311 et seq, (en adelante Ley Núm. 13), y la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. § 4001 et seq (en adelante Ley de Municipios Autónomos).

II

---

[6] Señaló los siguientes errores cometidos por el Tribunal de Circuito: (1) que no consideró que en virtud de los derechos, poderes y facultades delegados a la Administración por su ley orgánica, ésta puede identificar un predio de terreno para su venta al sector privado con el propósito de que el adquirente desarrolle un proyecto de vivienda de interés social ejerciendo así su política pública, por lo tanto, no debe revocarse sin justificación suficiente; (2) que interpretó el Reglamento para la Adquisición y Disposición de Propiedades Inmuebles de la Administración de manera inconsistente con los propósitos de su ley orgánica; (3) que concluyó que la Administración no cumplió con los requisitos de su Reglamento cuando los hechos y el récord demuestran su cumplimiento; (4) que resolvió que la decisión de vender el predio a Jardín Real fue un acto ultra vires de la Administración.

El Art. 1.004 de la Ley de Municipios Autónomos, *supra*,[7] expresa como norma de interpretación que los poderes y facultades conferidos a los municipios por esta ley, excepto disposición en contrario, se interpretarán liberalmente de manera que se garantice a los municipios, en cuanto sea posible, facultades necesarias para atender eficazmente las necesidades y el bienestar de sus habitantes. 21 L.P.R.A. § 4002. Entre los poderes que le confiere la Ley de Municipios Autónomos a éstos está la potestad de adquirir propiedad por cualquier medio legal, dentro y fuera de sus límites territoriales, 21 L.P.R.A. § 4051(d), y contribuir a la planificación y solución del problema de la vivienda económica de interés social mediante el desarrollo de proyectos de vivienda, con sujeción, claro está, a las leyes aplicables. 21 L.P.R.A. § 4054(n).

El principio general de autonomía que persigue implementar la Ley de Municipios Autónomos incluye, entre otros, que "no se impedirá a los municipios la ejecución de obras, planes de desarrollo físico o servicios debidamente aprobados, autorizados y financiados de acuerdo a las leyes aplicables". 21 L.P.R.A. § 4004(c). Sin embargo, este principio de autonomía municipal debe implementarse en armonía con las disposiciones y facultades del Gobierno Central ya que en muchos aspectos los poderes de ambos convergen en un mismo asunto.[8] De hecho, el Art. 10.004 de la Ley de Municipios Autónomos, *supra*,[9] sugiere que la autonomía municipal encuentra sus límites con la del Gobierno Central. No obstante, el Gobierno Central debe considerar lo que a juicio del alcalde sea necesario para cualquier fin público municipal. La consideración por parte del gobierno central se circunscribe a atender, en todo lo posible, las inquietudes e intereses de ordenación territorial presentadas por el municipio.

Vemos pues, que la Ley de Municipios Autónomos, mientras le da poderes ciertamente autónomos a los municipios para su ordenación territorial, el mismo está limitado por las leyes y política pública que persigue el gobierno central. Sin embargo, los planes

---

[7] La numeración del Artículo corresponde al original, antes de las renumeraciones posteriores. Lo mismo aplica a los Artículos de la Ley de Municipios Autónomos que se mencionarán en la ponencia.

[8] El Art. 13.008 de la Ley de Municipios Autónomos, *supra*, recalca la importancia de la colaboración que debe existir entre los planes territoriales del municipio y los del Gobierno Central. Entre estos planes debe existir estrecha coordinación. Los Planes de Ordenación, según el Art. 13.011, *supra*, estarán de conformidad con **todas** las políticas públicas, leyes reglamentos u otros documentos del gobierno central relacionados a la ordenación territorial y a la construcción.

[9] Dicho artículo dispone que:

Se podrá transferir gratuitamente por donación, o con causa onerosa por compra voluntaria, a un municipio el título de propiedad, usufructo o uso de cualquier terreno o facilidad del Gobierno Central sus instrumentalidades y corporaciones públicas, que **a juicio del Alcalde sea necesaria para cualesquiera fines públicos municipales.** Tal transferencia **estará sujeta a que las leyes que rijan la agencia pública que tenga el título o custodia de la propiedad así lo autoricen o permitan....** (Énfasis suplido.)

territoriales de ambas esferas deben aspirar a un desarrollo armónico, mutuamente satisfactorio en todo lo que sea posible. Esta armonía implica que el gobierno central debe atender las preocupaciones e inquietudes del municipio como parte del procedimiento pertinente. Considerando lo expuesto anteriormente, analizaremos específicamente las posibles limitaciones a la autonomía municipal expuestas en la Ley Orgánica de la Administración y su Reglamento de Disposición, sin menospreciar, claro está, las inquietudes e intereses del municipio en cuestión.

III

En E.L.A. v. Rosso, 95 D.P.R. 501, 540 (1967) expresamos que "las obras, proyectos, poderes, facultades y prerrogativas de la Administración de Terrenos de Puerto Rico... son obras, proyectos, poderes, facultades y prerrogativas investidas de interés público y de beneficio social". Según el Art. 7 incisos (s) y (t) de la Ley Núm. 13, *supra*, entre estos poderes y facultades de interés público están: (1) adquirir propiedad inmueble la cual podrá reservar para facilitar la continuación del desarrollo de los programas de obras públicas y beneficio social por la propia Administración u otras agencias, así como personas particulares, incluyendo, sin limitarlo, a programas de hogares; (2) estimular y participar en la habilitación de nuevas áreas dando consideración, entre otros factores, a preservar los valores naturales e históricos de las tierras.

El Reglamento de Disposición viabiliza la aplicación de la política pública plasmada en la Ley Núm. 13 de la Administración. Éste expone detalladamente el proceso que se debe seguir al adquirir o disponer terrenos. La definición de "agencia pública" del Art. IV del Reglamento de Disposición incluye a los municipios; la de "disposición de propiedad" incluye cualquier venta, permuta, donación o transferencia de título de dominio de propiedades inmuebles o de cualquier derecho real que la Administración realice. La parte segunda del Reglamento expresa las normas para la disposición de terrenos y propiedades.

El inicio del procedimiento para disponer de propiedades podrá comenzar a iniciativa de la Administración o mediante la radicación de una solicitud por una parte interesada. Una vez se comience el procedimiento por parte interesada, la Administración tiene que evaluarla siguiendo el procedimiento descrito en el Art. XVI, el cual funciona como una hoja de cotejo, antes de poder hacer la determinación de "propiedad disponible". Los incisos de este Artículo exigen que la Administración haga ciertas notificaciones dependiendo de cómo llegó la propiedad a manos de la Administración. Así pues, si se determina que la propiedad fue adquirida por la Administración a instancia de alguna agencia gubernamental, notificará a la agencia sobre la iniciación del procedimiento de disposición. Si en sesenta (60) días la agencia no expresa su interés en adquirirla, la Administración proseguirá con

los trámites. Si el Comité de Ventas[10] determina que no hay una agencia promovente o si la misma no expresó su interés de adquirir dentro de los sesenta (60) días, se ofrecerá la propiedad a distintas entidades gubernamentales, incluyendo al municipio donde está sita la propiedad. De esta notificación, la entidad tiene cuarenta y cinco (45) días para expresar su interés.

Luego del transcurso de este término, el Comité de Ventas evaluará la conveniencia de mantener la propiedad en reserva para propósitos de conservación u otros fines públicos o de utilización o desarrollo por la propia Administración. El Director Ejecutivo considerará la recomendación del Comité de Ventas y hará la determinación de si la propiedad debe o no mantenerse en reserva, fuera del mercado.[11] Si determina que la propiedad no debe mantenerse en reserva, el Director Ejecutivo declarará la propiedad como "propiedad disponible".[12]

El Art. XVIII(B)(3) del Reglamento de Disposición, *supra*, establece, entre otros, como criterio fundamental para la evaluación de las propuestas:

> El mejor desarrollo propuesto de acuerdo a una evaluación de los terrenos que la Administración tenga disponibles en el área, los usos proyectados o recomendados por la Administración y las necesidades más apremiantes a tenor con la política pública, procurando asegurar el mejor equilibrio en cuanto a los usos propuestos, necesidades y los terrenos disponibles.

Una vez la Administración determine, según expuesto someramente en los párrafos anteriores, la disponibilidad de la propiedad, ésta debe publicar una invitación a someter propuestas de compra y desarrollo dirigida al público.[13] Art. XVI(C) del Reglamento de Disposición, *supra*.

El Tribunal de Circuito utilizó al Art. XII(A)(3) del Reglamento de Disposición, *supra*, para fundamentar que la oferta de la Administración al Municipio no era bona fide, según lo requiere la ley. Sin embargo, este Artículo corresponde al proceso de negociación cuando la Administración se propone adquirir propiedad inmueble. La parte del Reglamento que regula la disposición de los bienes inmueble es la parte segunda, desde el Art. XIV del Reglamento de Disposición, *supra*. Sin embargo, coincidimos con el Tribunal de Circuito en que las actuaciones de la Administración deben estar fundadas en la buena fe, pero es porque el principio de buena fe es exigencia general de nuestro derecho. H.U.C.E. de Ame.

---

[10] Este organismo de la Administración evalúa las solicitudes de compraventa y somete recomendaciones al Director Ejecutivo en cuanto a la disponibilidad de las propiedades y su utilización más adecuada. Art. IV(h) del Reglamento de Disposición, *supra*.

[11] Art. XVI(A) del Reglamento de Disposición, *supra*.

[12] El Art. IV(S) del Reglamento de Disposición, *supra*, define "propiedad disponible" como el inmueble o derecho real que el Director Ejecutivo, en consulta con el Comité de Ventas, declare apropiado para la venta.

[13] "Divulgar": publicar invitación a someter propuestas de compra y desarrollo de Propiedad Disponible. Art. IV(L) del Reglamento de Disposición, *supra*.

v. V. & E. Eng. Const., 115 D.P.R. 711, 716 (1984); Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585, 587 (1981).

Como vimos, el Reglamento de Disposición, *supra*, establece un procedimiento específico para disponer de las propiedades del Estado, sujetas a ciertas consideraciones de política pública. Entre las consideraciones que expone el Reglamento de Disposición, *supra*, está el estimar o escuchar los intereses municipales en cuanto a la adquisición de terrenos.[14] El peso de consideración que se le da a esos intereses municipales depende de cómo llegó la propiedad a manos de la Administración. De esta manera, armonizamos las disposiciones de la Ley de Municipios Autónomos con la política pública perseguida en la Ley Orgánica de la Administración de Terrenos y el Reglamento de Disposición, *supra*.

IV

En el caso de autos, el terreno objeto de controversia era de la Administración. De la prueba no surge que la propiedad fue adquirida por la Administración a instancia de alguna agencia o municipio, por lo que no es de aplicación la notificación del Art. XVI(A)(2) del Reglamento de Disposición. Sin embargo, a pesar que los terrenos en controversia no fueron adquiridos a instancia de agencia o municipio, en cuyo caso se le daría gran deferencia a su interés de adquirirla, el Art. XVI(A)(3) le ordena a la Administración que le ofrezca a ciertas agencias y al municipio donde está sita, la propiedad sujeta al proceso de disposición. La diferencia determinante entre los incisos antes mencionados sobre la deferencia que la Administración le debe a las agencias o municipios que muestren interés es que cuando la propiedad fue adquirida por la Administración a instancia de agencia o municipio, el inciso 2 expresamente menciona que de la agencia o municipio no mostrar interés, la Administración proseguirá con los trámites de disposición. Contrario al inciso 2, nada expresa el inciso 3 sobre el efecto que tiene, en el proceso de disposición, la muestra de interés por parte de la agencia o municipio notificado.

La carencia de esta especificación en el inciso 3, que aplica al caso de autos, tiene el efecto de que la Administración puede ejercer más libremente la política pública expuesta en su Ley Orgánica. Así pues, a pesar que el municipio o la agencia muestre interés en adquirir la propiedad, la Administración puede, en aras de implantar su política pública, tomar en consideración de manera directiva los criterios de eligibilidad para compraventa

---

[14] Esta consideración está plasmada a través de los artículos del Reglamento. A modo de ejemplo, el Art. VIII del Reglamento de Disposición, *supra*, donde se reglamenta la adquisición de terrenos, ordena a la Administración la preparación de un Plan Anual de Adquisición de Propiedades Inmuebles Contenidas en el Inventario Municipal de Propiedades. La Administración incluirá una propiedad en este Plan Anual si está contenida en el Inventario Municipal de Propiedades y el Municipio demostrare que tiene la capacidad financiera para poner a la disposición de la Administración el dinero necesario para efectuar la adquisición.

según el Art. XIV del Reglamento de Disposición, *supra*. La muestra de interés de la agencia o del municipio en estos casos no impide a la Administración declarar el bien inmueble como "propiedad disponible", siguiendo, claro está, los planes justificados de organización territorial. Interpretar este inciso de otra manera menoscabaría indebidamente la política pública que la Administración ha sido llamada a implantar.

No obstante lo anteriormente expuesto, la Administración **tiene** que cumplir con las evaluaciones descritas en el Art. XVI del Reglamento de Disposición **antes** de declarar la "propiedad disponible". Además, una vez la Administración declara la propiedad como disponible, debe ordenar que se determine el valor en el mercado de acuerdo a la tasación al efecto.[15] Incumplir con el procedimiento de evaluación impide a la Administración declarar la disponibilidad de la propiedad.

La carta de 22 de agosto de 1996 de la Administración notificó al Municipio que la propiedad en controversia era "propiedad disponible", según definida en el Reglamento de Disposición, para un proyecto de vivienda de interés social. Este documento constituyó la notificación requerida del Art. XVI(A)(3), *supra*. No obstante, según lo expresamos anteriormente, esta notificación a las agencias y municipios debe hacerse **antes** de declarar la propiedad como "disponible".

Este requisito es de carácter esencial ya que responde a la política pública que involucra la ordenación territorial en consonancia con los intereses agenciales y municipales. En otras palabras, la muestra de interés oportuna por parte de una agencia o el municipio pertinente puede influir en la determinación eventual de "propiedad disponible". De hecho, el Art. XVI(B) del Reglamento de Disposición, *supra*, le exige al Director Ejecutivo de la Administración concluir con "los trámites de cotejo descritos en este Artículo [XVI]" antes de declararla "propiedad disponible".

La notificación al municipio antes mencionada tiene gran importancia pues las agencias o municipios que muestren interés serán partes interesadas en todo el procedimiento aunque no hayan adquirido la propiedad. Así, se exhortará su participación en las consultas de ubicación, las declaraciones de impacto ambiental y en todo el procedimiento posterior, ejerciendo más peso para que se cumplan cabalmente con los requisitos estatutarios.

---

[15] El Art. IV(W) del Reglamento de Disposición, *supra*, define "valor en el mercado" como "el precio mayor expresado en términos de dinero que un comprador estaría dispuesto a pagar por una propiedad...". Sin embargo, el Art. XVI(B), *supra*, también ofrece otra alternativa para determinar valor en el mercado "de acuerdo a tasación al efecto". Según el Reglamento de Disposición, esta tasación debe hacerse inmediatamente después de declararse la "propiedad disponible". Existe otro "valor" que, aunque no esté definido en el reglamento, debe incluirse en la solicitud de compraventa, o en la muestra de interés en la propiedad por parte del Municipio. Éste es el valor que debe ponerse en la solicitud como "partida presupuestaria para la adquisición".

Por lo tanto, la notificación de oferta de terreno por parte de la Administración al Municipio no es válida pues fue hecha después de haberse declarado la propiedad como disponible, en clara violación al estatuto.

Además, nos llama la atención el hecho que la Administración esperó dos años desde que recibió la solicitud de Jardín Real para notificar al Municipio la designación de "propiedad disponible" y hacerle la oferta del terreno. Durante estos dos años se celebró una consulta de ubicación sobre la viabilidad del proyecto de vivienda propuesto por Jardín Real y se adelantó la negociación entre la Administración y Jardín Real sin que el Municipio hubiese sido notificado según lo requiere el Reglamento de Disposición.[16] Por consiguiente, entendemos que la Administración expuso injustificadamente como razón para adjudicar el terreno a Jardín Real "lo adelantado que está la negociación de compraventa", después de todo, esta razón enfatiza la falta de notificación razonablemente oportuna al Municipio por parte de la Administración.

Finalmente, queremos expresar que la carta de 22 de agosto le notificó al Municipio que sólo tenía treinta (30) días contados desde la fecha de la carta para expresar su interés, cuando el Reglamento de Disposición le concede cuarenta y cinco (45) días contados desde el recibido de la notificación.

Lo expuesto anteriormente no significa que la mera muestra de interés por parte una agencia o municipio, según el Art. XVI(A)(3), *supra*, impida a la Administración implementar razonablemente su política pública, lo que sí exige es que la Administración cumpla cabalmente con los requisitos y procedimientos establecidos en el Reglamento de Disposición, *supra*, máxime cuando son exigencias cuyo fin es armonizar la política pública de la Administración con la de la Ley de Municipios Autónomos.

V

Por lo expuesto anteriormente, expresamos nuestra conformidad con la sentencia que antecede, la cual confirma la parte dispositiva de la sentencia del Tribunal de Circuito. La Administración debe velar por el cumplimiento cabal de su Reglamento de Disposición.

Miriam Naviera de Rodón
Juez Asociada

---

[16] A pesar de este hecho, no se puede afirmar que el Municipio estaba a espaldas de todo la propuesta de Jardín Real pues el Municipio participó en la vista pública de la Junta de Planificación para oponerse al proyecto de vivienda propuesto por Jardín Real. Dicha vista se celebró en la propia alcaldía del Municipio de Vega Baja. Véase nota al calce núm. 1.